UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARLENE MONGOLD,

                            Plaintiff,

    v.                                               **DECISION AND ORDER**
                                                             09-CV-855S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

       1.      Plaintiff Darlene Mongold challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since January 18, 2007, due to C3-4 disc bulge, mild C4-5 disc bulge, C5-6 mild retrolisthesis with mild canal stenosis, C6-7 disc herniation, L4-5 and L5-S1 disc bulges with radiculopathy, and chronic obstructive pulmonary disease. Plaintiff contends that her impairments have rendered her unable to work. She therefore asserts that she is entitled to disability benefits under the Act.

       2.      On February 6, 2007, Plaintiff submitted an application for disability insurance benefits, disabled widow's benefits, and supplemental security income. Her application was initially denied on July 25, 2007. Pursuant to Plaintiff's request, an administrative hearing was held before ALJ Eric L. Glazer on March 12, 2009, at which Plaintiff appeared with counsel and testified. The ALJ considered the case *de novo*, and on March 31, 2009, denied Plaintiff's application for benefits. On September 18, 2009, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on October 1,

1

2009, challenging Defendant's final decision.[1]

3.      On February 22, 2010, the Government and Plaintiff filed Cross Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Government and Plaintiff filed responses on March 12 and March 22, 2010, respectively. This Court took the motions under advisement without oral argument.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla" and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen,

---

[1] The ALJ's September 18, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the

3

> [Commissioner] then determines whether there is other work which the
> claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 17);[2] (2) Plaintiff's C3-4 disc bulge, mild C4-5 disc bulge, C5-6 mild retrolisthesis with mild canal stenosis, C6-7 disc herniation, L4-5 and L5-S1 disc bulges with radiculopathy, and chronic obstructive pulmonary disease are "severe" impairments within the meaning of the Act (R. at 17); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (R. at 19); (4) Plaintiff was capable of performing her past relevant work as a telemarketer or order filler (R. at 25) since she retained the residual functional capacity to perform light

---

[2] Citations to the underlying administrative record are designated as "R."

4

work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except she should avoid exposure to dust, fumes, humidity, chemicals, pulmonary irritants, and temperature extremes (R. at 20); and (5) though Plaintiff could perform her past work, thus making this step superfluous, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.  (R. at 25).  Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his decision March 31, 2009.  (R. at 26).

10. Plaintiff raises four challenges to the ALJ's decision.  First, she argues that the ALJ failed to properly assess the opinions of her treating doctors pursuant to Social Security Ruling ("SSR") 96-2p.  The ALJ credited three opinions, but gave limited weight to opinions that were in response to Plaintiff's subjective complaints.  (R. at 24).  This is because the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effect of [her] symptoms lack the ring of credibility."  (R. at 22).  Thus, sufficiency of the ALJ's assessment of the medical opinions is dependent on whether the ALJ's credibility finding is properly supported.

11. Credibility determinations are generally reserved to the Commissioner, not the reviewing court.  Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984).  But such determinations must be consistent with 20 CFR 404.1529(c)(4) and 20 CFR 416.929(c)(4) and "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p.

5

12. Here, the ALJ made an adverse credibility finding based on several factors. First, the ALJ "scrutinized [Plaintiff's] presentation at the hearing and noted evasion and inconsistency regarding the entirety of her medical complaints and history of alcohol abuse." (R. at 22). Second, the ALJ found that Plaintiff was less than rigorous about adhering to treatments, noting that Plaintiff "is not entirely compliant with medications and recommendations; she changes providers on a frequent basis; she freely admits at hearing that she did not take medication as prescribed and despite a diagnosis of chronic pulmonary disease with asthma, she continues to smoke cigarettes." (R. at 22). Third, the ALJ concluded that Plaintiff "does not seek treatment with the frequency one would expect of someone experiencing a disabling condition." (R. at 22).

13. With regard to the finding that Plaintiff was evasive and inconsistent about her medical complaints, the ALJ relies on the various medical opinions and treatments Plaintiff sought. (R. at 22). While this Court acknowledges that the number of different opinions sought by Plaintiff can be viewed as an "attempt to find [a treatment] that works," SSR 96-7p at 7, it can equally be viewed dubiously given Plaintiff's history of seeking disability benefits. (R. at 22, 215, 218). The ALJ's conclusion was based on the latter interpretation of the evidence, and where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. See Rutherford, 685 F.2d at 62.

14. The ALJ also substantiates his conclusion that Plaintiff was evasive and inconsistent with respect to her history of alcohol abuse, citing in support:

> In June 2006 [Plaintiff's] primary care physician received a letter from Erie County Medical Center stating that the [Plaintiff] was entering substance abuse treatment. In June 2007 the [Plaintiff] reported that she occasionally

6

drank socially, but she had never abuse (sic) alcohol or drugs. However, at the hearing [Plaintiff] conceded she has a drinking problem, albeit one which, she stated, never affected her work.

(R. at 22). The ALJ's descriptions of the June 2006 letter (R. at 221), Plaintiff's June 2007 statements concerning her drinking habits (R. at 246, 251), as well as her concession concerning her drinking problem at the hearing (R. at 38) are accurate. Additionally, the transcript of the hearing shows that, absent the ALJ's query, Plaintiff would have depicted her history of substance abuse treatment incorrectly:

> ALJ: Okay. And during this period of time you were still using tobacco.
> Plaintiff: Yes.
> ALJ: And what about any other substances? Tobacco being one, alcohol being another --
> Plaintiff: No, sir.
> ALJ: – prescription medications. Ever have a problem with substances where you were worried or someone else was worried and needed to get any kind of treatment for it?
> Plaintiff: No, sir.
> ALJ: Never entering substance abuse treatment in June of '06?
> Plaintiff: No, sir.
> ALJ: Never, ever happened?
> Plaintiff: No, sir.
> ALJ: Okay. So if it's in the record it's wrong?
> Plaintiff: Yeah, it is.
> ALJ: All right.
> Plaintiff: It might have been the one time that I went by myself because I was drinking like on the weekends –

(R. at 37-38).

This constitutes sufficient evidence to support the ALJ's conclusion the Plaintiff was evasive and inconsistent with respect to her history of alcohol abuse.

15. In support of his finding that Plaintiff less than rigorously adheres to medical treatments and recommendations, the ALJ noted that "[Plaintiff] changes providers on a frequent basis; she freely admits at hearing that she did not take medication as prescribed and despite a diagnosis of chronic obstructive pulmonary disease with asthma, she continues to smoke cigarettes." (R. at 22). These observations are supported by substantial evidence and thus sufficient to support the ALJ's conclusion. For example, medical records reflect Plaintiff changing providers frequently. (R. at 194, 213-227, 236-242). At the hearing, Plaintiff described taking medicine in a manner different than prescribed. (R. at 60-61). Additionally at the hearing, Plaintiff testified that, despite having asthma and COPD, she continues to smoke cigarettes. (R. at 37).

16. The ALJ erred, however, with respect to his finding that Plaintiff did not seek treatment with the frequency one would expect of someone experiencing a disabling condition. The record contains evidence that Plaintiff made 179 visits between May 2007 and February 2009, to Julius Horvath, D.C., for treatment of her injury. This is more than eight visits per month, or two per week. Although the ALJ need not consider the substance of Horvath's medical opinion because chiropractors are considered "non-acceptable medical sources" (SSR 06-3p at 2), the ALJ failed to consider this course of treatment at all. The sheer number of visits directly contradicts the notion that Plaintiff failed to seek treatment with the frequency of someone who suffers a disabling condition. If this were the sole basis of the ALJ's adverse credibility finding, it would be legally defective. But the ALJ's adverse credibility finding was also based on supported findings of "evasion and inconsistency" at the hearing, as well as less than rigorous adherence to treatments. (R. at 22). It is therefore supported in the record.

17. Because the adverse credibility finding was sufficient, the ALJ properly gave limited weight to medical opinions generated from Plaintiff's subjective complaints. The ALJ was incorrect, however, in finding that "[t]he records of Dr. Pollina do not reflect any clinical observations, imagings or laboratory tests supportive of his clinical conclusions." (R. at 24). In his assessment of Plaintiff, Dr. Pollina reviewed imagings, specifically an MRI. (R. at 237). This mistake is mitigated, however, because even if the ALJ gave more than limited weight to Dr. Pollina's opinion, the "credited" opinions of Romanth Waghmarae, M.D., Guy Corkill, M.D., and Nikita Dave, M.D. (R. at 24) still provide substantial evidence to support the ALJ's conclusions. As such, the error is harmless and Plaintiff's first challenge is rejected.

18. Plaintiff's second challenge is that the ALJ erred by substituting his own opinion in place of the medical experts' opinions. Plaintiff alleges that "[t]he ALJ plays the role of doctor in this case as she [sic] bases her [sic] finding on her [sic] own interpretation of the Plaintiff's objective medical findings and ignores the Plaintiff's subjective complaints of neck and back pain." (Pl.'s Mem., Docket No. 5, p. 23). In searching the ALJ's opinion, the Court finds no instances where the ALJ interprets objective medical findings or substitutes his judgment for that of medical professionals, and Plaintiff offers no examples, only her conclusory allegation. Accordingly, Plaintiff's second challenge is rejected.

19. Plaintiff's third challenge is that the ALJ erred as a matter of law by failing to recontact her treating sources. (Pl.'s Mem., Docket No. 5, p. 14). Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. § 404.1512(e). Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack

9

necessary information, or when the reports are not based on medically-acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(e)(1); Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

20. Applying these principles to the instant case, this Court finds that the ALJ did not err by failing to recontact Plaintiff's medical providers. First, it is well-settled that the ultimate determination of whether a plaintiff meets the statutory definition of disability is reserved to the Commissioner. See 20 C.F.R. § 404.1512(e)(1). Second, the record, which spans approximately 370 pages, contains sufficient evidence from which the ALJ could make a disability determination. Lastly, at the hearing, counsel for Plaintiff was asked if she would like to make an opening statement. Counsel declined, but noted that there were no preliminary issues and "the record is complete." (R. at 30). Thus, in light of the foregoing, Plaintiff's third challenge is rejected.

21. Plaintiff's final argument is that the ALJ's residual functional capacity ("RFC") assessment is not based on substantial evidence. The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b), except that she should avoid exposure to dust, fumes, humidity, chemicals, pulmonary irritants, and temperature extremes. (R. at 20). Additionally, pursuant to 20 C.F.R. § 404.1565 and 20 C.F.R. § 416.965, the ALJ found Plaintiff capable of performing her past relevant work, which does not require the performance of work-related activities precluded by the Plaintiff's RFC. (R. at 25).

22. In making an RFC assessment, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p at 2; see also 20 C.F.R. §§ 404.1545(b)-(d),

416.945(b)-(d). The ALJ must specify which functions the claimant is able to perform and may not "simply mak[e] conclusory statements regarding [the claimant's] capacities." LaPorta v. Bowne, 737 F.Supp.180, 183 (N.D.N.Y. 1990). Then, after assessing the claimant's functional limitations and abilities, the ALJ categorizes the RFC into exertional levels of work, e.g., "sedentary, light, medium, heavy and very heavy." SSR 96-8p at 2.

23. Here, this Court finds that the ALJ complied with the requirements for evaluating Plaintiff's RFC. For instance, the ALJ noted Dr. Corkill's assessment that Plaintiff was capable of lifting no more than 20 pounds and should avoid back-stressing activities, such as repetitive lifting, bending, pushing, pulling, twisting, and stooping. (R. at 25). Dr. Dave found that Plaintiff had mild to moderate limitations for heavy lifting, carrying, pushing, pulling, repetitive bending, and twisting. (R. at 25). Additionally, Dr. Dave determined that Plaintiff should avoid cleaning products, chemicals, perfumes, pollen, and extremes of climate. (R. at 25). The ALJ also considered Dr. Waghmarae's opinion that Plaintiff had a moderate level of disability, but not significant enough to prevent her from continuing her work as an aide. (R. at 25). All of this is consistent with the requirements of Plaintiff's prior work and a "light work" categorization, with the limitations identified by the ALJ. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). Accordingly, this Court finds that the ALJ's RFC determination is supported by substantial evidence and rejects Plaintiff's final challenge.

24. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical

evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated: July 25, 2010
       Buffalo, New York


                                                          /s/William M. Skretny
                                                         WILLIAM M. SKRETNY
                                                              Chief Judge
                                                        United States District Court